



FILED
6/6/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JKS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TURLINGTON HOMES, INC., GLOBAL REAL ESTATE DEVELOPMENT INC., DAVID HAISLIP, JOHN E. GROFF, and JEDIDIAH BROWN,

     Plaintiffs,

v.

RYAN R. SINWELSKI, and KELLER WILLIAMS PREFERRED REALTY,

     Defendants.

Case No. 1:26-cv-02390

Hon. Philip R. Perry

---

## DEFENDANT RYAN R. SINWELSKI'S MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6) AND CHALLENGE TO CAPACITY TO SUE

---

Now comes Defendant, Ryan R. Sinwelski, proceeding pro se, and respectfully moves this Honorable Court to dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and fundamentally challenges the legal capacity of the filing entity, "Lento Law Group, P.C.," to initiate or maintain suit in the State of Illinois. In support thereof, Defendant states as follows:

### MEMORANDUM OF LAW

### I. INTRODUCTION

This action is a textbook Strategic Lawsuit Against Public Participation (SLAPP) brought by an out-of-state litigation machine trying to abuse the federal judiciary to silence an investigative journalist and local civic advocate. Plaintiffs seek damages for defamation per

se based entirely on an investigative internet broadcast concerning matters of intense municipal and public concern in Harvey, Illinois.

Crucially, the filing firm, "Lento Law Group, P.C.," is a legal ghost in this jurisdiction. It does not exist within the databases of the Illinois Secretary of State and is operating in open defiance of Illinois Supreme Court Rule 721. Furthermore, another federal court has already dismissed an identical "copy-paste" defamation suit brought by this exact firm under nearly identical social media circumstances. Because the Complaint fails on both fundamental procedural grounds and basic First Amendment principles, it must be dismissed with prejudice.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A pro se pleading is held to less stringent standards, and the court must construe the facts in the light most favorable to the unrepresented defendant. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## III. ARGUMENT

**A.** Plaintiffs' Counsel Lacks Capacity to Sue or Seek Fees Under Illinois Supreme Court Rule 721.
As an absolute threshold matter, this lawsuit is procedurally void. The Complaint was submitted by an entity styling itself as "Lento Law Group, P.C." out of a virtual office located at 180 N. Stetson Ave., 35th Floor, Chicago, IL 60601.

Under Illinois Supreme Court Rule 721(c), no professional corporation (P.C.) or limited liability company may engage in the practice of law in Illinois, or open an office for that purpose, without a valid Certificate of Registration issued by the Illinois Supreme Court. To obtain and maintain this registration, the entity must be actively registered and in good standing with the Illinois Secretary of State.

Public records demonstrate that "Lento Law Group, P.C." is completely unregistered with the Illinois Secretary of State (See Exhibit B, Figure 1). While an entity named "LLG National Law Group IL, P.C." exists, a firm cannot litigate under a non-existent or unregistered corporate name (See Exhibit B, Figures 2 and 3). Because "Lento Law Group, P.C." has failed to comply with Rule 721, it lacks the legal capacity to represent clients, file pleadings, or

seek the "reasonable attorney's fees" demanded in the Complaint within an Illinois court. Pleadings filed by a firm in violation of Rule 721 are defective and subject to being stricken. (Further, the Illinois Attorney Registration and Disciplinary Commission confirms Plaintiffs' counsel's official registered firm is 'Chi City Legal, LLC', not the filing entity. See Exhibit C.)

**B.** This Court Should Follow Identical Precedent Dismissing this Firm's Defamation Claims: Lento Law Group, P.C. v. Lewis (A true and correct copy of this Opinion and Order is attached hereto as Exhibit A). The deficiencies of the plaintiffs' legal strategy are already a matter of federal judicial record. In Lento Law Group, P.C. v. Lewis et al., Case No. 24-10031 (E.D. Mich. June 11, 2024), Hon. George Caram Steeh dismissed an identical suit brought by this exact firm against citizens criticizing them online.

In that case, the Court held that internet message boards and social media commentary "are generally regarded as containing statements of pure opinion rather than statements or implications of actual, provable fact." Id. at *6. The Court further noted that even offensive terms or allegations of misconduct "must be read in context to determine whether they are merely exaggerations of the type often used in public commentary" and constitute protected "rhetorical hyperbole." Id. at *5-6.

Like the defendants in Lewis, Mr. Sinwelski's livestreams were digital vehicles for public commentary, criticism, and opinion regarding public figures and controversial local property developments. Under standard First Amendment protections, expressions of pure opinion and rhetorical hyperbole are incapable of a defamatory meaning as a matter of law.

**C.** The Complaint Fails to Plead Defamation with the Required Specificity.
Under Illinois law, a plaintiff claiming defamation per se must allege a false statement of fact clear enough to cause damage on its face. The Plaintiffs' Complaint fails this baseline standard because it relies on broad, conclusory grievances rather than setting forth the exact, verbatim statements allegedly made by Defendant. A defendant cannot defend against a claim of defamation when the plaintiff hides behind generalizations about a broadcast rather than pointing to specific, provable-as-false assertions of fact.

**D.** The Plaintiffs' Claims Fall Directly Under the Scope of the Illinois Citizen Participation Act (Anti-SLAPP).
This lawsuit was explicitly designed to intimidate and financially drain a local journalist and independent media broadcaster. Because Defendant's live broadcasts directly targeted municipal transactions, civil rights controversies involving plaintiff Jedidiah Brown, and local real estate transactions, the speech is fully protected under the Illinois Citizen

Participation Act, 735 ILCS 110/1 et seq. The Act mandates swift dismissal of strategic lawsuits aimed at chilling public participation and free speech. Under the Act, a moving party is entitled to safe harbor if their actions were in furtherance of their constitutional rights to petition, speech, or association in connection with a public issue. Defendant's broadcast focused entirely on local real estate developments, public safety, and municipal expenditures—matters that sit squarely at the absolute bedrock of protected public participation.

## IV. CONCLUSION

For the foregoing reasons, Defendant Ryan R. Sinwelski respectfully requests that this Honorable Court:

1. Dismiss Plaintiffs' Complaint with prejudice under Rule 12(b)(6);
2. Strike all pleadings filed by the unregistered entity "Lento Law Group, P.C.";
3. Award Defendant all costs and reasonable expenses incurred as a result of this bad-faith litigation; and
4. Grant such further relief as this Court deems just and proper.

Dated: June 6, 2026

Respectfully submitted,

/s/ Ryan R. Sinwelski_____
Ryan R. Sinwelski, Pro Se
15333 Ashland Ave
Harvey, IL 60426
312-436-2182
ryan@ryansgaychicago.com

**DEFENDANT'S INDEX OF EXHIBITS**

Exhibit A: True and correct copy of the Opinion and Order Granting Defendants'
Motions to Dismiss in Lento Law Group, P.C. v. Lewis et al.,
Case No. 24-10031 (E.D. Mich. June 11, 2024).

Exhibit B: True and correct copies of the Illinois Secretary of State Business
Entity Search Results and Assumed Name History for "Lento" and
"LLG National Law Group IL, P.C." (Dated June 6, 2026).

Exhibit C: True and correct copy of the Illinois Attorney Registration and
Disciplinary Commission (ARDC) Attorney Status portal details for
John C. Norkus (Dated June 6, 2026).

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LENTO LAW GROUP, P.C.,

    Plaintiff,

                              Case No. 24-10031

v.

                              Hon. George Caram Steeh

LADEL LEWIS, LINDA ANN
POHLY, FLORENDA LEE-HALL,
JOYCE ANN WILSON, and VEDA
DIANE BALLA,

    Defendants.

_____/

OPINION AND ORDER GRANTING DEFENDANTS'
<u>MOTIONS TO DISMISS (ECF NOS. 13, 17)</u>

Plaintiff Lento Law Group, P.C., a law firm, is suing five Flint residents

for comments they posted on the Flint Politics Facebook group page.

Defendants Ladel Lewis and Linda Ann Pohly have filed motions to dismiss

the claims against them pursuant to Rule 12(b)(6).

<u>BACKGROUND FACTS</u>

Lento Law Group, P.C. ("Lento") represents clients in the city of Flint,

Michigan. For marketing purposes, Lento purchased a booth at the 2023

Flint Northern Alumni Tailgate and Health Fair. Two Flint council members,

Jerri Winfrey-Carter and Tonya Burns, bought Lento polo shirts and wore

- 1 -

them at the fair. Days later, Defendant Lewis, who is also a member of the Flint City Council, posted a photo of Winfrey-Carter and Burns wearing their Lento Law shirts on Facebook. The post included citations to Michigan statutes (M.C.L. § 4.414, § 15.342) and the Flint Charter, which prohibit gifts worth more than $25 to public employees. Lewis captioned the Facebook post as follows:

> According to the 6th Ward's post defining gifts, it appears that these fancy personalized Lento shirts qualify. Were they more than $25? Can you represent the city and the law firm in litigation with the city at the same time? Is that affecting their votes? Is this why they are not voting to give the residents ARPA dollars? Looks like they are more loyal to Lento than the residents of the City of Flint.

ECF No. 1 at ¶ 20. Lento contends that this post is defamatory because it suggests that it "has or has attempted to, bribe and/or influence Councilwomen Winfrey-Carter and Burns's voting on the Flint City Council." *Id.* at ¶ 21.

On September 4, 2023, another post was made on the Flint Politics Facebook group involving Lento. The original post referred to a lawsuit against Lewis that was filed in this court in August 2023. Beverly Biggs-Leavy, who is represented by the Lento Group, alleged that Lewis improperly removed her from a City Council meeting in violation of her First

Amendment rights.[1] *See* E.D. Mich. Case No. 23-12123. Rennie Lee and

Linda Pohly commented on the post, as follows:

> **Rennie Lee**: So is the Lento Group attending Flint Council
> meetings looking for ways to set themselves the ability to
> sue the city? It's sad that [City council member] Eric Mays
> is using his go fund me money to pay attorneys to sue
> Flint. That's just grimy. I'm praying they request attorneys
> fees and court cost[s] for these frivolous lawsuits[.]
>> **Linda Pohly**: **Rennie Lee** yes, that is why they are
>> there.
>> We don't know for sure who is funding these lawsuits,
>> but from looking at the Go Fund Me account, there is
>> not enough money to pay for all of this litigation. I am
>> sure at least some of the money is coming from
>> somewhere else.

ECF No.1 at ¶ 26. Lento contends that this post is defamatory because it is

"factually inaccurate and explicitly imputes deceptive, underhanded, or

unprofessional conduct on the part of Plaintiff." *Id.* at ¶ 52. It further asserts

that Lento "represents Flint City Councilman Eric Mays, and therefore, said

attorneys attend the Flint City Council meetings to ensure that he is being

treated fairly in said meetings and that his political opponents on the

Council, such as Defendant Lewis, are not infringing upon his rights." *Id.* at

¶ 53.

---

[1] The complaint was dismissed pursuant to Rule 12(b)(6) on March 15, 2024. Case No.
23-12123, ECF No. 18.

The complaint alleges claims of defamation per se, false light defamation, and tortious interference with business expectancy. Although it also alleges that New Jersey law applies, Plaintiff concedes in its briefing that Michigan law is applicable. Plaintiff further accepts dismissal of its false light claim.

<u>LAW AND ANALYSIS</u>

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

The elements of a defamation claim are as follows: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special

harm caused by publication." *Smith v. Anonymous Joint Enter.*, 487 Mich. 102, 113 (2010). Plaintiff relies upon a defamation *per se* theory. *See* M.C.L. § 600.2911(1); *Cetera v. Mileto*, 342 Mich. App. 441, 452 (2022). The question of whether a statement has defamatory meaning is one for the court. *Fisher v. Detroit Free Press, Inc.*, 158 Mich. App. 409, 413 (1987).

"To be considered defamatory, statements must assert facts that are 'provable as false.'" *Ghanam v. Does*, 303 Mich. App. 522, 545 (2014). A statement of opinion "may be defamatory when it implies assertions of objective facts." *Smith*, 487 Mich. at 129. However, "rhetorical hyperbole" or mere exaggerations "that cannot be interpreted as stating actual facts" cannot serve as the basis for a defamation claim. *Ghanam*, 303 Mich. App. at 545-46. The court must consider a statement in context when determining whether it is defamatory. *Smith*, 487 Mich. at 129. Actual accusations of criminal activity are considered defamation *per se. Ghanam*, 303 Mich. App. at 545. "However, not all statements that can be read as accusations of a crime or misconduct should be considered assertions of fact." *Id.*

> Such statements include the usual rhetorical hyperbole
> and imaginative expression often found in satires,
> parodies, and cartoons. This is true even when the
> statements are designed to be highly offensive to the

> person criticized, and even if, when read literally, the statements can be interpreted as accusations of criminal activity. Terms such as "blackmailer," "traitor," "crook," "steal," and "criminal activities" must be read in context to determine whether they are merely exaggerations of the type often used in public commentary. . . . If a reasonable reader would understand these epithets as merely "rhetorical hyperbole" meant to express strong disapproval rather than an accusation of criminal activity or actual misconduct, they cannot be regarded as defamatory.

*Id.* at 545-46 (citations omitted). *See also Anders v. Cuevas*, 984 F.3d 1166 (6th Cir. 2021).

The forum in which the statements are made is also relevant. "Courts that have considered the matter have concluded that Internet message boards and similar communication platforms are generally regarded as containing statements of pure opinion rather than statements or implications of actual, provable fact." *Ghanam*, 303 Mich. App. at 547. Facebook posts made by individuals are on the low end of the reliability scale of sources on the internet. *Id.* "Blogs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, *they are not a source of facts or data upon which a reasonable person would rely.*" *Id.* (citation omitted, emphasis in original).

Plaintiff's claim against Pohly is based upon her statement in response to the question "So is the Lento Group attending Flint Council meetings looking for ways to set themselves the ability to sue the city?"

Pohly responded, "yes, that is why they are there." Plaintiff argues that the accusation that they are "looking to ways" to sue the city is defamatory. The court disagrees. Based upon the forum (Facebook) and the context of the discussion, it is clear that Pohly is merely expressing an opinion, rather than a provable fact. Statements of opinion are incapable of defamatory meaning and are not actionable.

Similarly, Plaintiff's defamation claim against Lewis is based upon her Facebook post of a photo of two council members wearing Lento Law shirts. Lewis suggested that the shirts were "gifts" from Lento and questioned whether Lento was influencing the council members' votes:

> According to the 6th Ward's post defining gifts, it appears that these fancy personalized Lento shirts qualify. Were they more than $25? Can you represent the city and the law firm in litigation with the city at the same time? Is that affecting their votes? Is this why they are not voting to give the residents ARPA dollars? Looks like they are more loyal to Lento than the residents of the City of Flint.

ECF No. 1 at ¶ 20. Plaintiff argues that the "only reasonable implication" of this post is that Lento "engages in bribing members of the Flint City Council." However, viewing the post as a whole, Lewis is providing her interpretation of a photo and statutes prohibiting gifts, while criticizing the ethics of fellow council members. This type of "personal interpretation of the available information constitutes . . . opinion, and this opinion is not

actionable as defamation." *Knutson v. Gassert*, 2023 WL 5988457, at *5 (Mich. App. Sept. 14, 2023) (citing *Sarkar v. Doe*, 318 Mich. App. 156, 190 & n.18 (2016)). As the court stated in *Sarkar*, "when a speaker outlines the factual basis for his conclusions, his statement is protected by the First Amendment." *Sarkar*, 318 Mich. App. at 190.

Moreover, Lewis's assumption that Lento gifted shirts to council members cannot reasonably interpreted as an actual accusation of bribery, which requires corrupt intent. *See* M.C.L. § 750.117. The suggestion that a council member could be bribed by a free polo shirt falls into the category of "rhetorical hyperbole," "meant to express strong disapproval rather than an accusation of criminal activity or actual misconduct." *Ghanam*, 303 Mich. App. at 545. Because Lewis's statements cannot be interpreted as an actual accusation of a crime, Plaintiff has not stated a claim for defamation *per se. See Cetera,* 342 Mich. App. at 452 (holding that under Michigan law, actions for defamation *per se* are "limited to those in which the false and defamatory statements regard criminality and lack of chastity," not "statements that concern a party's business, profession, or employment").

To plead a defamation claim, Plaintiff must allege a "defamatory statement" and "either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by

publication." *Smith*, 487 Mich. at 113. Pohly and Lewis's statements are contextually presented as opinions rather than as stating facts, and neither statement qualifies as defamation *per se*. In addition, Plaintiff has not alleged "special harm" resulting from the publication of these statements. For these reasons, Plaintiff has failed to plausibly allege all of the required elements of a defamation claim against either Pohly or Lewis.

With respect to its tortious interference claim, Plaintiff must plead "(1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship; and (4) resulting damage to the plaintiff." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (applying Michigan law). The third element requires a showing that "the interference with a business relationship" is "improper in addition to being intentional." *Id.* (citation omitted).

Plaintiff's allegations in support of its tortious interference claim are entirely conclusory. *See* ECF No. 1 at ¶¶ 89-94 ("[U]pon information and belief, a significant number of potential customers were, or could have been, turned away from Plaintiff's business as a direct and proximate result of Defendants' false and defamatory post, thus causing Plaintiff to incur

- 9 -

damages in the form of lost business."). Plaintiff does not allege that a specific business relationship or expectancy was terminated as a result of Lewis's or Pohly's comments, that Defendants intentionally interfered with a business relationship or expectancy, or that it suffered damages. *See* ECF No. 1 at ¶ ¶ 89-94. Moreover, expressions of opinion "are protected from defamation actions, including actions alleging interference with business." *Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich. App. 396, 402 (1995) (citations omitted). Plaintiff has failed to allege sufficient facts in support of a plausible tortious interference claim.

<u>ORDER</u>

For these reasons, IT IS HEREBY ORDERED that Lewis and Pohly's motions to dismiss (ECF No. 13, 17) the claims against them are GRANTED.

Dated: June 11, 2024

<u>s/George Caram Steeh</u>
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 11, 2024, by electronic and/or ordinary mail.

<u>s/LaShawn Saulsberry</u>
Deputy Clerk

# Exhibit C

# John C. Norkus

as of 3/29/2026 4:09:14 PM

| | |
|---|---|
| **Full Licensed Name** | John C. Norkus |
| **Registered Address** | Chi City Legal, LLC<br>11 N Northwest Hwy Suite 123<br>Park Ridge, Illinois 60068-3444 |
| **Registered Phone** | (312) 600-7457 |
| **Registered Email** | john@chicitylegal.com |

| | |
|---|---|
| **Date Admitted** | November 01, 2012 |
| **Illinois Registration Status** | Active and authorized to practice law |
| **Malpractice Insurance** | In annual registration, the attorney reported that the attorney, or the attorney's firm, maintains malpractice insurance. |

## Public Record of Discipline and Pending Proceedings

None

Check carefully to be sure that you have selected the correct lawyer. At times, lawyers have similar names. Disciplinary results displayed above, if any, include information relating to any and all public discipline, court-ordered disability inactive status, reinstatement and restoration dispositions, and pending public proceedings. Investigations are confidential and information relating to the existence or status of any investigation is not available. For additional information regarding data on this website, please contact ARDC at (312) 565-2600 or, from within Illinois, at (800) 826-8625.

ARDC makes every effort to maintain the currency and accuracy of Lawyer Search. If you find any typographical errors in the Lawyer Search information, please email registration@iardc.org. Attorneys may make changes to their contact information on the ARDC's Online Registration page, or by completing and submitting the Change of Address form available on our Address Changes page. Name changes require the filing of a motion with the Supreme Court. Please consult our Name Change Requests page for details.