# UNITED STATES DISTRICT COURT
for the
Northern District of Illinois- Eastern Division

| | |
|---|---|
| TURLINGTON HOMES, INC., GLOBAL REAL ESTATE DEVELOPMENT, INC., DAVID HAISLIP, JOHN E. GROFF, and JEDIDIAH BROWN, *Plaintiffs,* <br><br> -v- <br><br> RYAN R. SINWELSKI and KELLER WILLIAMS PREFERRED REALTY, *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 1:26-cv-02390 <br> Hon. Philip R. Perry |

## PLAINTIFFS' OPPOSITION TO DEFENDANT RYAN R. SINWELSKI'S MOTION TO DISMISS

Plaintiffs TURLINGTON HOMES, INC., GLOBAL REAL ESTATE DEVELOPMENT, INC., DAVID HAISLIP, JOHN E. GROFF, and JEDIDIAH BROWN respectfully submit this Opposition to Defendant RYAN R. SINWELSKI'S Motion to Dismiss. The motion is legally and procedurally unsound. It relies on inflammatory rhetoric rather than governing law, misstates the applicable federal standards, cites non-binding and factually inapposite authority, and disregards the detailed factual allegations set forth in the Complaint. Those allegations are specific, plausible under Rule 8 and Rule 12(b)(6), and have already been answered in full by co-defendant KELLER WILLIAMS PREFERRED REALTY, confirming that the Complaint is clear, particularized, and fully capable of supporting the claims asserted.

Because the motion identifies no defect in pleading, no deficiency in any element of Plaintiffs' causes of action, and no cognizable basis for dismissal, it should be denied in its entirety.

## I. INTRODUCTION

Defendant's motion is long on invective and short on law. It opens by accusing Plaintiffs

of filing a "textbook SLAPP," labels Plaintiffs' counsel a "legal ghost," and relies on a non-binding Michigan decision involving public officials' Facebook commentary. None of this has any bearing on the well-pled claims before this Court, and none provides a cognizable basis for dismissal under Rule 12(b)(6).

The Complaint alleges specific defamatory statements made by Defendant during a publicly accessible YouTube livestream, including express accusations of criminal conduct, fraud, kickback schemes, corruption, and unethical business practices.

Under Illinois law, these are classic defamation-per-se allegations: factual assertions capable of being proven false, not rhetorical hyperbole or opinion. The Complaint further alleges concrete reputational and economic harm flowing directly from Defendant's publication.

The pleading also sets forth detailed allegations supporting claims for false light and tortious interference with prospective economic advantage, including investor hesitation, municipal concern, and disruption of financing. These allegations easily satisfy the plausibility standard under *Twombly* and *Iqbal*.

The Complaint alleges detailed, plausible claims supported by specific factual allegations, and Defendant's motion ignores this reality in favor of rhetoric and inapposite authority. Because the Complaint meets all federal pleading requirements and Defendant identifies no legal defect in any claim, the motion should be denied in its entirety.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court must accept all well-pled factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. The plausibility standard is not a probability

requirement; it simply requires enough factual content to allow the Court to reasonably infer liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The Complaint easily meets this standard. It identifies the precise date of publication, the platform used, the title of the broadcast, the defamatory statements made, the context in which they were delivered, and the resulting reputational and economic harm.

These allegations are more than sufficient to place Defendant on notice of the claims and the grounds upon which they rest.

The Complaint easily meets this standard, alleging specific facts that allow the Court to reasonably infer liability. Because the Complaint satisfies the governing federal pleading standards, dismissal under Rule 12(b)(6) is unwarranted.

## III. ARGUMENT

**A. Defendant's Rule 721 "capacity to sue" argument is legally baseless.**

Defendant's threshold contention, that Plaintiffs' counsel "lacks capacity to sue" due to alleged non-compliance with Illinois Supreme Court Rule 721, is meritless. It reflects a fundamental misunderstanding of federal procedure and provides no basis for dismissal.

**1. FRCP 17(b) governs capacity in federal court.**

Federal Rule of Civil Procedure 17(b)(2) squarely resolves the issue:

> *"Capacity to sue or be sued is determined… for a corporation, by the law under which it was organized."*

Thus, a corporation's capacity to litigate in federal court is governed by the law of its state of incorporation, not by Illinois Supreme Court attorney-registration rules. Plaintiffs' counsel's alleged registration status under Rule 721 has no bearing whatsoever on Plaintiffs' capacity to sue.

**2. Rule 721 governs attorney registration, not party capacity.**

Rule 721 regulates the registration of professional corporations engaged in the practice of law before Illinois courts. It does not govern whether a plaintiff may file suit, whether a complaint is valid, or whether pleadings may be stricken. Defendant cites no authority, because none exists, holding that an alleged Rule 721 defect voids federal pleadings or deprives a litigant of the capacity to sue.

**3. Even if a registration issue existed, dismissal is not the remedy.**

Even assuming arguendo that a registration irregularity existed, the appropriate remedy would be substitution or amendment, not dismissal with prejudice. Defendant's requested relief is unsupported by any rule or case law.

Because Rule 721 has no application to party capacity in federal court, and because any alleged registration issue would not warrant dismissal, Defendant's argument should be rejected.

**B. Defendant's reliance on *Lento Law Group v. Lewis* is misplaced and irrelevant.**

Defendant's motion leans heavily on *Lento Law Group, P.C. v. Lewis*, an Eastern District of Michigan decision that has no precedential force in this Court and bears no meaningful resemblance to the facts or legal issues presented here. The comparison is strained at best.

To begin, *Lewis* applied Michigan defamation law, which differs materially from Illinois law in both substance and scope. Illinois recognizes defamation per se where a defendant imputes criminal conduct or makes statements that prejudice a plaintiff in its trade or profession. The Michigan court's analysis of rhetorical hyperbole under its own state's standards has no bearing on the Illinois doctrines governing this case.

The factual context of *Lewis* is equally inapposite. That case involved political commentary between public officials, Facebook posts by one elected official criticizing other elected officials

in the midst of local political disputes. The speech at issue was quintessential political opinion, made in a forum known for casual commentary, and directed at individuals who were indisputably public figures.

Nothing about that context resembles the present case, which concerns defamatory statements made about private developers engaged in a commercial redevelopment project. Plaintiffs are not public officials, and Defendant's statements were not political commentary. They were accusations of criminality, corruption, fraud, and kickback schemes, assertions presented as factual claims about Plaintiffs' business practices and professional integrity.

Moreover, the statements at issue in Lewis were expressly treated as rhetorical hyperbole, exaggerated language typical of online political debate. Here, by contrast, Defendant made specific factual assertions during a publicly accessible YouTube livestream, including calling the development a "scam," accusing Plaintiffs of operating a "kickback scheme," labeling them "crooks" and "scammers," and claiming they used "outside contractors to get kickbacks." These are not loose expressions of opinion; they are concrete allegations of criminal conduct capable of being proven false. Illinois law treats such statements as actionable defamation per se.

Illinois courts apply a well-established framework to distinguish protected opinion from actionable factual assertions, examining (1) whether the statement has a precise and readily understood meaning, (2) whether it is verifiable, and (3) whether its context signals factual reporting rather than rhetorical expression. Defendant's accusations - including that Plaintiffs operated a "scam," engaged in "fraud," and ran a "kickback scheme" - satisfy each factor. They have clear meanings, are objectively verifiable, and were delivered in a format purporting to convey factual information, reinforced by Defendant's invocation of his professional licensure.

Under Illinois precedent, such statements are not insulated opinion but actionable defamation per se. This legal framework further demonstrates why Defendant's reliance on Lewis is misplaced and why his statements fall squarely within Illinois's defamation-per-se categories.

Finally, *Lewis* is not binding on this Court. It is a decision from another district applying another state's law to a wholly different factual scenario. Defendant's attempt to elevate it to a controlling authority is legally unsound and underscores the absence of any relevant precedent supporting dismissal.

For all of these reasons, Defendant's reliance on *Lewis* is misplaced, and the argument should be rejected.

**C. The Complaint pleads with specificity and KWPR's Answer confirms it.**

Defendant's assertion that the Complaint lacks specificity is contradicted by both the record and the procedural posture of this case. The Complaint identifies the precise date of Defendant's publication, the platform used, the title of the broadcast, the defamatory statements made, the context in which they were delivered, and the resulting reputational and economic harm. These allegations are detailed, concrete, and fully consistent with the pleading requirements of Rule 8.

The Complaint describes a publicly accessible YouTube livestream published on February 24, 2026, titled "Turlington Homes Scam 'breaks ground' in Harvey." It recounts the specific statements Defendant made during that broadcast, including accusations that Plaintiffs were operating a "scam," engaging in "fraud," participating in a "kickback scheme," using "outside contractors to get kickbacks," and acting as "crooks" and "scammers." It further alleges that Defendant presented these statements as factual assertions grounded in his purported professional expertise as a licensed Illinois real-estate agent. The Complaint also details the foreseeable and

actual harm caused by the publication, including investor hesitation, municipal concern, disruption of financing, and reputational damage.

Additionally, co-defendant KELLER WILLIAMS PREFERRED REALTY has already answered the Complaint, admitting, denying, or disclaiming knowledge of each allegation. KWPR's ability to respond meaningfully to every allegation confirms that the Complaint is sufficiently specific, comprehensible, and detailed to permit a responsive pleading. A pleading that another defendant has already answered in full cannot reasonably be characterized as vague, unintelligible, or conclusory.

Nor does Rule 8 require Plaintiffs to attach transcripts or provide verbatim recordings of the defamatory statements. Federal pleading standards require only that Plaintiffs allege the substance of the statements with sufficient clarity to place Defendant on notice of the claims and the grounds upon which they rest. Plaintiffs have done precisely that.

Defendant's specificity argument is therefore unsupported by the record and should be rejected.

### D. Defendant's Anti-SLAPP argument fails as a matter of law and fact.

Defendant's invocation of the Illinois Citizen Participation Act ("CPA") is both procedurally improper and substantively meritless. The CPA provides a special statutory mechanism for dismissing lawsuits that target protected petitioning activity. But federal courts in Illinois have repeatedly held that the CPA's dismissal procedure is a state-law procedural device that does not apply in federal court. Under *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), and *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996), federal courts must apply federal procedural rules where they conflict with state procedural mechanisms, and the CPA's special motion to dismiss is incompatible with Rule 12(b)(6). Defendant's attempt

to raise the CPA through a Rule 12(b)(6) motion is therefore improper as a matter of federal procedure.

Even if the CPA applied in federal court - which it does not - Defendant's argument would still fail. The statute protects only speech "solely aimed at procuring favorable government action." Defendant's YouTube broadcast did not petition the government, comment on legislative or administrative proceedings, or seek to influence any governmental decision. Instead, he used a publicly accessible livestream to accuse private developers of criminal conduct, fraud, kickback schemes, corruption, and unethical business practices.

These statements were directed at Plaintiffs' commercial activities, not at any governmental process. They were made in the context of a private redevelopment project, not a political dispute or public-policy debate. Nothing about Defendant's broadcast resembles the type of petitioning activity the CPA was designed to protect.

The Harvey Redevelopment Agreement further underscores the commercial nature of the project and the falsity of Defendant's accusations. The Agreement shows that the redevelopment project is real, formally approved by the City of Harvey, and supported by municipal cooperation. The groundbreaking ceremony was legitimate, the project involves substantial investment, and Plaintiffs are engaged in a bona fide development effort governed by municipal codes and contractual obligations. Defendant's statements did not critique government action; they falsely accused private parties of criminality and corruption in connection with a legitimate commercial project.

Because the CPA does not apply in federal court, because Defendant has not filed the required statutory motion, and because the speech at issue is not protected petitioning activity, Defendant's Anti-SLAPP argument fails both procedurally and substantively. It should be rejected.

**E. Plaintiffs have adequately pled defamation per se.**

The Complaint easily states a claim for defamation per se under Illinois law. Illinois recognizes defamation per se where a defendant publishes false statements that impute the commission of a crime or that prejudice a plaintiff in its trade, profession, or business. Defendant's statements do both.

The Complaint alleges that Defendant published a publicly accessible YouTube livestream in which he accused Plaintiffs of operating a "scam," engaging in "fraud," participating in a "kickback scheme," using "outside contractors to get kickbacks," and acting as "crooks" and "scammers." These are direct assertions of criminal conduct and professional dishonesty, factual claims capable of being proven false, and they fall squarely within the categories of defamation per se recognized by Illinois courts.

The Complaint further alleges that Defendant presented these accusations as factual claims grounded in his purported professional expertise as a licensed Illinois real-estate agent. By invoking his licensure and professional status, Defendant amplified the credibility of his statements and increased the likelihood that viewers would perceive them as authoritative. Illinois law treats false factual assertions made with the imprimatur of professional expertise as particularly damaging to a plaintiff's business reputation.

The Complaint also alleges actual malice and reckless disregard for the truth. Defendant made no effort to investigate the project, verify his claims, or contact Plaintiffs. Instead, he relied on speculation and inflammatory rhetoric, intentionally framing his statements as factual assertions to provoke public hostility and generate online engagement. These allegations satisfy the fault element required for defamation claims under Illinois law.

Finally, the Complaint alleges both presumed and actual damages. Under Illinois law,

damages are presumed where a defendant imputes criminal conduct or prejudices a plaintiff in its trade or profession. The Complaint also alleges concrete harm, including investor hesitation, disruption of financing, municipal concern, and reputational injury. These allegations more than suffice at the pleading stage.

Because the Complaint alleges false statements of fact imputing criminal conduct, made with actual malice, published to third parties, and causing both presumed and actual damages, Plaintiffs have adequately pled defamation per se.

## F. Plaintiffs have adequately pled false light.

The Complaint also states a viable claim for false light under Illinois law. A false-light claim requires allegations that the defendant publicly attributed to the plaintiff views or conduct that are false, highly offensive to a reasonable person, and made with knowledge of or reckless disregard for their falsity. Plaintiffs' allegations satisfy each element.

The Complaint alleges that Defendant publicly disseminated statements portraying Plaintiffs as criminals, fraudsters, corrupt developers, and participants in kickback schemes. These statements were presented as factual assertions grounded in Defendant's purported professional expertise as a licensed Illinois real-estate agent. By invoking his licensure and positioning himself as an industry insider, Defendant increased the perceived credibility of his statements and amplified the reputational harm they caused. A reasonable person would find such false accusations of criminality and corruption highly offensive, particularly when directed at individuals and entities engaged in legitimate real-estate development and community investment.

The Complaint further alleges that Defendant acted with knowledge of falsity or reckless disregard for the truth. Defendant made no effort to investigate the project, verify his claims, or contact Plaintiffs. Instead, he relied on speculation and inflammatory rhetoric, intentionally

framing his statements as factual assertions to provoke public outrage and generate online engagement. These allegations satisfy the fault requirement for false-light claims under Illinois law.

The Complaint also alleges widespread publication. Defendant broadcast his statements during a publicly accessible YouTube livestream, reaching hundreds of viewers during the initial broadcast and continuing to reach additional viewers thereafter. The livestream remains publicly available, causing ongoing reputational harm. This level of dissemination easily meets the "publicity" requirement for false-light claims.

Finally, the Complaint alleges concrete harm resulting from Defendant's false-light publication, including reputational injury, emotional distress, diminished goodwill, investor hesitation, and disruption of business relationships. These allegations are more than sufficient at the pleading stage.

Because the Complaint alleges a false and highly offensive portrayal, made with knowledge or reckless disregard for its falsity, publicly disseminated, and causing actual harm, Plaintiffs have adequately pled false light.

### G. Plaintiffs adequately pled tortious interference with prospective economic advantage.

The Complaint states a viable claim for tortious interference with prospective economic advantage. Under Illinois law, a plaintiff must allege: (1) a valid business expectancy; (2) the defendant's knowledge of that expectancy; (3) intentional and unjustified interference; and (4) resulting damages. The Complaint alleges each element with specificity and factual detail.

The Complaint alleges that Plaintiffs maintained ongoing and prospective business relationships with investors, contractors, municipal partners, and community-development organizations connected to the Turlington Homes redevelopment project. These were not

speculative or hypothetical expectancies; they were active negotiations and established relationships involving reasonably certain future economic benefits. Plaintiffs' redevelopment work depended on investor confidence, municipal cooperation, and community support, all of which were in place prior to Defendant's publication.

The Complaint further alleges that Defendant knew of these business expectations. His broadcast specifically referenced the Turlington Homes project, Plaintiffs' roles in the development, and the involvement of community partners. He understood that Plaintiffs relied on public trust and professional credibility to advance the project, and he knew that his statements would foreseeably undermine those relationships.

The Complaint also alleges intentional and unjustified interference. Defendant published a publicly accessible YouTube livestream accusing Plaintiffs of criminal conduct, corruption, fraud, and kickback schemes. These accusations were fabricated, unsupported by evidence, and made without any attempt to verify their accuracy. Defendant framed his statements as factual assertions grounded in his purported professional expertise, intending to provoke public hostility and disrupt Plaintiffs' business relationships. Nothing in the Complaint suggests that his conduct was privileged, justified, or protected. On the contrary, the allegations establish that his interference was malicious, reckless, and commercially harmful.

Finally, the Complaint alleges concrete damages resulting from Defendant's interference. Plaintiffs experienced investor hesitation, postponement of financing discussions, concern from municipal partners, disruption of professional relationships, and diminished goodwill. These harms occurred immediately after the publication of the livestream and were the direct and foreseeable result of Defendant's false statements. Illinois law does not require Plaintiffs to identify every lost contract or quantify damages at the pleading stage; it requires only that Plaintiffs

allege that Defendant's conduct caused actual economic harm. Plaintiffs have done so.

Because the Complaint alleges valid business expectancies, Defendant's knowledge of those expectancies, intentional and unjustified interference, and resulting damages, Plaintiffs have adequately pled tortious interference with prospective economic advantage.

<h3 style="text-align:center">IV. CONCLUSION</h3>

For all the reasons set forth above, Defendant's motion identifies no defect in pleading, no deficiency in the elements of any claim, and no cognizable basis for dismissal under Rule 12(b)(6). The Complaint alleges detailed, plausible, and well-supported claims for defamation per se, false light, and tortious interference with prospective economic advantage, and Defendant's arguments regarding Rule 721, *Lewis*, specificity, and the Illinois Citizen Participation Act are legally unsupported, procedurally improper, and factually inapposite. Accordingly, Plaintiffs respectfully request that the Court deny Defendant Ryan R. Sinwelski's Motion to Dismiss in its entirety and allow Plaintiffs' claims to proceed to discovery.

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

Dated: June 30, 2026

 */s/ John Norkus*
JOHN NORKUS, ESQUIRE
180 N Stetson Ave., 35th Floor
Chicago, IL 60601
(T) 856.652.2000 x497
(F) 856.375.1010
John.norkus@llgnational.com
*Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2026, I electronically filed the foregoing Plaintiffs' Opposition to Defendant Ryan R. Sinwelski's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ John Norkus*
JOHN NORKUS, ESQUIRE